UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT (Hartford)

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : Docket No. 3:18-cr-00260-MPS |
| v. | : |
| | : |
| JESUS VAZQUEZ-MARTINEZ | : |
| Defendant. | : January 13, 2020 |

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes now the defendant, JESUS VAZQUEZ-MARTINEZ, by and through undersigned court-appointed counsel, and hereby respectfully submits his sentencing memorandum in support of a five-year mandatory minimum prison sentence.

**I.   Brief Statement of the Case.**

On October 28, 2019, Mr. Vazquez pled guilty, with a plea agreement, to Count One of the Superseding Indictment, charging conspiracy to possess with intent to distribute and to distribute more than 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B), and § 846.  See Doc. 295-4 at 1.  Mr. Vazquez and the government agreed that "the quantity of heroin involved in the defendant's offense was at least 100 grams but less than 400 grams of a mixture and substance containing a detectable amount of heroin."  See Doc. 295-4 at 4.

Thus, Mr. Vazquez's base offense level was 24 under U.S.S.G. § 2D1.1(c)(8), with three levels subtracted for acceptance of responsibility, resulting in an adjusted offense level of 21.  At the parties' calculated criminal history category II, the resultant guideline range is 41-51 months in prison, which becomes 60 months based on the statutory mandatory minimum sentence.  See Doc. 295-4 at 4.  Of import, Mr. Vazquez and the government agreed "that neither a downward departure nor an upward departure from the sentencing range set forth [in the plea agreement] is warranted and that a sentence within the agreed range is reasonable."  See Doc. 295-4 at 5.

1

Additional facts are addressed, infra.

**II.    Legal Argument.**

    **A.    Standard.**

As this Honorable Court well understands, post-United States v. Booker, 543 U.S. 220 (2005), the guidelines are advisory. See Pepper v. United States, 131 S.Ct. 1229, 1247 (2011). "A district court should normally begin all sentencing proceedings by calculating, with the assistance of the Presentence Report, the applicable [g]uidelines range," since the "[g]uidelines provide the 'starting point and the initial benchmark' for sentencing." See United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (citing Gall v. United States, 552 U.S. 38, 49 (2007)).

Next, a district court must "conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." See Cavera, 550 F.3d at 189; Gall, 552 U.S. at 50. In doing so, a district court "shall impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public, and to provide needed training, medical care or other correctional treatment. See 18 U.S.C. § 3553(a)(2).

A district court is "free to impose sentences outside the recommended range. When… do[ing] so…[a court] 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" See Cavera, 550 F.3d at 189; Gall, 552 U.S. at 50; 18 U.S.C. § 3553(a). "While the terms 'departure' and 'variance' are often used interchangeably to describe deviations…a 'departure' refers to a decision by the [d]istrict [c]ourt to impose a sentence outside the otherwise applicable…[g]uidelines range pursuant to a provision of the [g]uidelines." See United States v. Keller, 539 F.3d 97, 99 n. 2 (2d Cir. 2008). "A 'variance,' on the other hand, describes the [d]istrict [c]ourt's power pursuant to 18 U.S.C. §

2

3553(a) to impose a sentence outside of the otherwise applicable [g]uidelines range…" Id.

Here, Mr. Vazquez and the government agreed that "neither a downward nor an upward departure from the sentencing range set forth [in the plea agreement] is warranted and that a sentence within the agreed range is reasonable. Accordingly, neither party will seek a departure or seek any adjustment not set forth herein" and the defendant "will not seek a non-Guideline sentence." See Doc. 295-4 at 5.

**B.   Objections to the Presentence Report.**

Under Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure, "[a]t sentencing, the court…must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." See United States v. Wagner-Dano, 679 F.3d 83 (2d Cir. 2012) (though adoption of the presentence report did not resolve a factual dispute, "because the PSR itself took no position with regard to it," the district court did not commit plain error by failing to address the defendant's objection); United States v. Howard, 455 Fed. Appx. 87 (2d Cir. 2012) (unpublished) ("although the district court did not rule on whether Howard was a member of the Bloods…the…court's remarks at…sentencing…made clear that it would not consider…purported membership…when crafting its sentence. Any technical failure…to explicitly state as much is harmless").

Here, respectfully, this Honorable Court need not resolve the dispute in ¶15 re. the claim by CW-3 that Mr. Vazquez sold heroin in Willimantic in 2017 (at which time he maintains he was in substance abuse treatment in Waterbury) to properly calculate Mr. Vazquez's guideline range. The identity of CW-3 was not disclosed and is not known to Mr. Vazquez. However, the quantity of heroin claimed by CW-4, in ¶16, undisputed by Mr. Vazquez, comports with the

agreed quantity involved in Mr. Vazquez's offense of more than 100 grams but less than 400 grams of heroin.  See Doc. 295 at 7; Doc. 295-4 at 4.

Similarly, whether this Honorable Court calculates Mr. Vazquez's criminal history category at II (resulting in a guideline range of 41-51 months), see Doc. 295-4 at 4-5, or III (resulting in a guideline range of 46-57 months), see Doc. 295 at 16, the 60-month mandatory minimum sentence provided under 21 U.S.C. § 841(b)(1)(B) becomes the guideline range.  See U.S.S.G. § 5G1.1(b) ("[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence").  Thus, resolution of this question will not affect proper calculation of Mr. Vazquez's guideline range.

Also re. Mr. Vazquez's criminal history, the edited version of ¶ 44 (Doc. 295 at 11), to which Mr. Vazquez previously objected, inaccurately identified the court as Waterbury Superior Court; No. W11D-CR18-0161905-S was lodged in G.A. 11, the Superior Court in Danielson, CT.  See Exh. 2 (court file).

Apologetically, Mr. Vazquez notes one inadvertently omitted correction to the initial presentence report:  ¶55 incorrectly states that Mr. Vazquez has a scar from an appendectomy at the University of Connecticut Hospital in 1994/1995.  See Doc. 295 at 14.  Mr. Vazquez did not move to Connecticut until 2005 (Doc. 295, ¶ 58, at 14); rather, his appendix was removed at San Agustin Manati, a hospital in Puerto Rico in 1994/1995.

Finally, Mr. Vazquez respectfully notes that the Indictment, filed October 24, 2018 (Doc. 20), rather than the Superseding Indictment, filed January 23, 2019 (Doc. 93), inadvertently was attached to the presentence report.  Mr. Vazquez pled guilt to Count One in the Superseding Indictment, with the agreement that the "[a]t sentencing, Government will move to dismiss

Count One in the Indictment in so far as it pertains to the defendant." See Doc. 295-4 at 1, 8.

    **C.**    **The application of U.S.S.G. § 5G1.3.**

Mr. Vazquez respectfully requests that this Honorable Court order that the federal sentence run concurrent to the anticipated five-year prison sentence in State v. Vazquez-Martinez, No. KNL-CR19-0160209-T.

To begin, U.S.S.G. § 5G1.3(d) provides: "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3 n. 4(A) further provides:

> Under subsection (d), the court may impose a sentence concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment. In order to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity, the court should consider the following:
>
>    (i)    The factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));
>
>    (ii)   The type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
>
>    (iii)  The time served on the undischarged sentence and the time likely to be served before release;
>
>    (iv)  The fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
>
>    (v)   Any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

The United States Supreme Court explained in Setser v. United States, 566 U.S. 231, 235 (2012): "[j]udges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they

impose, or that have been imposed in other proceedings, including state proceedings." In <u>Setser</u>, the Supreme Court extended that rationale to the "the context…where a federal judge anticipates a state sentence that has not yet been imposed." <u>See</u> <u>Id</u>. at 236, 244; <u>see</u> <u>also</u> <u>McCarthy v. Doe</u>, 146 F.3d 118, 121 (2d Cir. 1998) ("there is no basis to infer any intention as to consecutive or concurrent service from the sentencing judge's silence…The judge's failure to specify concurrence in these circumstances is not reasonably interpreted as indicating an intention that the sentences be consecutive").

The undischarged sentence, here, arises in the pending criminal matter, <u>State v. Vazquez-Martinez</u>, No. KNL-CR19-0160209-T.  <u>See</u> Doc. 295-4 at 8 ("the Government represents that, in consideration for the defendant's federal guilty plea, the New London State's Attorney's Office has indicated it will offer a plea to five years to the defendant for his pending criminal charges… to be served concurrent to his federal sentence.  The defendant also intends to request that the Court take into consideration the time he has been incarcerated for the federal offense when imposing his federal sentence.  The Government agrees not to oppose this request.").  The factors under U.S.S.G. § 5G1.3 n. 4(A) are taken in turn.

Re. the 18 U.S.C. § 3553(a) factors, Mr. Vazquez adopts the argument in Sec. II. D, <u>infra</u>. <u>See</u> U.S.S.G. § 5G1.3 n. 4(A)(i).

Next, reflected in the plea agreement, Mr. Vazquez anticipates a determinate five-year prison sentence, imposed in No. KNL-CR19-0160209-T in the New London Judicial District. <u>See</u> U.S.S.G. § 5G1.3 n. 4(A)(ii) and (iv).

Re. the length of time served on the undischarged sentence, and the corollary question of whether the Bureau of Prisons will give credit for any of Mr. Vazquez's time in state custody, is somewhat complicated.  <u>See</u> U.S.S.G. § 5G1.3 n. 4(A)(iii) and (v).  To start, under 18 U.S.C. §

3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences – (1) as a result of the offense for which the sentence was imposed…that has not been credited against another sentence."

Reflected on the Connecticut Department of Correction Inmate Information website, Mr. Vazquez was sentenced on October 31, 2018 in state court. See Exh. 1. Those state sentences were imposed in: State v. Vasquez-Martinez, No. W11D-CR15-0331252-T, with a sentence of one year to serve in prison imposed on a violation of probation; and State v. Vazquez-Martinez, No. W11D-CR18-0161905-S, with unconditional discharges granted on possession of a controlled substance and failure to appear, second degree, and one year to serve in prison, concurrent to No. W11D-CR15-0331252-T, on interfering with an officer. Per the Department of Correction, Mr. Vazquez completed those concurrent one-year prison sentences on June 12, 2019. See Exh. 1. Even though Mr. Vazquez's state convictions and sentences resulted from relevant conduct, e.g., the April 24, 2018 stop and seizure of heroin, under 18 U.S.C. § 3585(b), the Bureau of Prisons will not credit Mr. Vazquez for the time served from November 7, 2018 to June 12, 2019 because credited in Nos. W11D-CR18-0161905-S and W11D-CR15-0331252-T.

Further, Mr. Vazquez was not then released to federal custody on June 12, 2019. Rather, prior to completion of the concurrent one-year prison sentences, Mr. Vazquez was arrested (on April 8, 2019) on the pending criminal matter in No. KNL-CR19-0160209-T.[1] He remained in state custody until a pretrial on October 4, 2019, at which the state court reduced Mr. Vazquez's $100,000 bond to a promise to appear so that he transferred out of state custody and into federal

---

[1] This arrest occurred based on analysis of the DNA sample collected from Mr. Vazquez upon his federal arrest in this matter; Mr. Vazquez's criminal record consists of misdemeanor convictions only.

7

custody (on October 4, 2019). Because that state criminal matter remains pending, with the anticipation that a five-year prison sentence will impose after Mr. Vazquez's federal sentencing, under 18 U.S.C. § § 3585(b), the Federal Bureau of Prisons will not credit Mr. Vazquez for the time served from June 12, 2019 to October 4, 2019, which credit to No. KNL-CR19-0160209-T.

Reflected on the Connecticut Department of Correction Inmate Information website, Mr. Vazquez currently is held at New Haven Correctional Center on a "federal offense," without any detainer, see Exh. 1, because the federal detainer already was served on Mr. Vazquez. Thus, it is anticipated that, under 18 U.S.C. § § 3585(b), the only time credit that Mr. Vazquez may receive from the Federal Bureau of Prisons correlates to the pretrial detention in federal custody, beginning on October 4, 2019 to present, approximately three months, rather than one year and two months since his federal arrest. Based on communication with the Bureau of Prison Northeast Regional Office leading up to Mr. Vazquez's federal guilty plea, with a plea agreement, Mr. Vazquez's status as a federal, rather than state, inmate, is crucial to the Bureau's calculation.

Re. the time likely to be served before release on the anticipated sentence in No. KNL-CR19-0160209-T, see U.S.S.G. § 5G1.3 n. 4(A)(iii), Mr. Vazquez will not become eligible for parole consideration by the Connecticut Board of Pardons and Paroles until after he has served eighty-five percent of the anticipated five-year prison sentence, which, generally correlates to the maximum release date calculated if all risk reduction credits are earned under Conn. Gen. Stat. § 18-98e and the policy implemented by the Department of Correction (up to five days credited per month). Of importance, the state calculation is consistent with the maximum 54 days per year of good time credit allowed under 18 U.S.C. § 3624(b) in the Bureau of Prisons.

Thus, in consideration of the factors set forth in U.S.S.G. § 5G1.3 n.4(A), Mr. Vazquez respectfully requests that this Honorable Court order that the federal sentence run concurrent to

8

the anticipated five-year prison sentence in No. KNL-CR19-0160209-T.

### D. The 18 U.S.C. § 3553(a) Factors.

Consideration of the section 3553(a) factors supports a five-year mandatory minimum prison sentence.

**First**, a "court, in determining the particular sentence to be imposed, shall consider…the nature and circumstances of the offense and the history and characteristics of the defendant." See 18 U.S.C. § 3553(a)(1).

Mr. Vazquez, called Omar (his middle name) by his family and friends, has struggled with substance abuse since his father passed away in 1998 when Omar was fourteen years old. Omar's father suffered a massive stroke at work while teaching and, a year later, a heart attack at home; in 1998, while his aunt was visiting Puerto Rico from Chicago, his father went to the store and did not return. One of his father's students found him unresponsive sitting on a bench, facing the water, with a newspaper in hand and a smile on his face, a story that Omar holds onto dearly; Omar's father was pronounced dead shortly thereafter at the local hospital.

Omar's life changed after his father's death, not only because he was extremely close to his father, but because he felt responsible to make money to support the household. His mother, though working, was in debt and had difficulty collecting his father's insurance proceeds; the Social Security benefit that she eventually secured also was not enough to support her, Omar and Omar's brother. Omar began to sell and abuse illegal substances; he initially smoked marijuana, but progressed to regular crack cocaine abuse. Omar's addiction quickly upended any ill-gotten financial contribution to the family and, further, became so bad that one day his mother told him that if he did not stop, she would be gone, which happened in 2005. One day, Omar awoke in his mother's home in Puerto Rico and she had left to live with Omar's brother in Norwich, CT.

9

Two days later, Omar moved to Norwich to turn his life around. That move represented the only time in Omar's life that he successfully ceased substance abuse without the intervention of criminal charges. Omar remained sober and was "doing well" from 2005 until 2013, working regularly and traveling to Puerto Rico to see his children during times that he could not work due to injuries sustained on the job.[2] In 2013, Omar's best friend left Norwich and returned to Puerto Rico; at that time Omar was around a family member who began to again abuse illegal substances, and he fell back into an old, bad pattern without the best friend who spoke frankly with him about Omar's past and the choices he should make in the present.[3]

In 2015, Omar's mother had her first brain surgery to remove a tumor and moved, for a short time, out of state to live with Omar's brother, but soon returned to live with his cousin. During the 2015-2016 timeframe, Omar continued to abuse heroin. Omar maintained a stretch of sobriety from his August 2016 arrest in No. W11D-CR15-0331252-T until in or about December 2017. Of note, in December 2016, the state court granted Mr. Vazquez's motion and reduced his bond to a promise to appear so that he could complete in-patient substance abuse treatment at Wellmore/Morris Therapeutic Shelter. See Exh. 3 at 15-17. Mr. Vazquez successfully remained on pretrial release until the state court imposed sentence (one year in prison, execution suspended, and two years of probation) in September 2017. See Exh. 3. Mr. Vazquez continued to participate in substance abuse treatment in Waterbury, and did not return to Willimantic, until around Christmas 2017, which proved to be a consequential mistake.

---

[2] Omar used the funds secured in a settlement with his employer re. that work injury to purchase a vehicle and to travel to Puerto Rico and spend a significant length of time with his children, while all three were living there. He did not use the money to purchase, and did not abuse, illegal substances, evidenced in part by the lack of arrest or criminal conviction, as well as his subsequent employment history. See e.g. Doc. 295 at 11.

[3] Omar's parents did not abuse illegal substances; however, Omar recalls family gatherings while growing up where maternal and paternal extended relatives used drugs.

10

To be clear, Mr. Vazquez does not blame anyone but himself for his substance abuse. He has spent the last year and several months, while incarcerated, reflecting on his life and has come to understand that he used drugs to numb himself to avoid dealing with family issues. He knows that he needs to process his emotions re. his family circumstances and needs professional help to develop better coping strategies to address those issues and, in turn, to maintain his sobriety.

To this end, Omar aims to redefine his future. He has remained incarcerated since July 2018, the longest period in his life, and, further, for the first time, was designated to correctional facilities housing inmates with lengthy prison sentences. E.g., Mr. Vazquez served part of the concurrent one-year sentences in Nos. W11D-CR18-0161905-S and W11D-CR15-0331252-T at MacDougall-Walker Correctional Institution, where he interacted with inmates, young and old, serving prison sentences of more than 50 years. He talked to those individuals and learned about their lives and the different choices that they would have made, upon years of reflection, if given a second chance.

At other facilities, Omar met 18 to 21-year-old men coming into the state correctional system (pretrial or after receiving short sentences) with the mentality that he once had – abusing and selling illegal substances. Mr. Vazquez has talked to some of those younger individuals and shared his life experiences, passing forward the valuable experiences that he had at MacDougall, and telling the young men not to go "down the same path" and that the street lifestyle is a "waste of time." While Omar does not consider himself "old," he readily will share with this Honorable Court that he is "too old for this."

During his time in state custody, Omar attempted to complete various substance abuse treatment programs; although his multiple transfers in the Department of Correction custody prevented successful completion, Omar gained insight into his addiction and behavior through

11

those programs, including Tier 1 while at Corrigan Correctional Center (transferred after a co-defendant was designated to that facility); Good Intentions – Bad Choices (focused on "addicts and offenders leaving treatment or an incarcerated setting and re-entering society.  This period of early reintegration is especially risky for addicts and offenders despite intentions of doing well and straightening out their lives because errors in thinking that are the result of years of an addictive and/or criminal lifestyle…are not so easily or quickly resolved"); and weekly Narcotics Anonymous meetings, also at Corrigan.

Omar will share with this Honorable Court that he does not want to fall into old patterns and that he has learned to change "people, places and things" to achieve a different outcome on his release – sobriety and reintegrating into society as a productive citizen.  He further wants to rebuild the relationships that he once shared with his mother and children before he no longer has the opportunity.

Mr. Vazquez's mother is diagnosed with Alzheimer's disease and underwent a second brain surgery to remove a tumor in 2019; she lives in Massachusetts with Omar's cousin, her children and her significant other.  Mr. Vazquez is immensely appreciative of his cousin, who helps his mother with daily tasks, despite challenges that she faces in her immediate family, including raising a young child diagnosed with Autism.  Since his July 2018 arrest, Omar has noticed a decline in his mother's mental status, e.g., forgetting to press 1 on the telephone to accept his prison call, setting down the telephone mid-call and forgetting where she placed it, and forgetting what she ate shortly after finishing a meal.  Omar knows that his cousin does not have room for him in her home on his eventual release from incarceration, but he hopes to help

with his mother's care to whatever degree possible.[4]

Mr. Vazquez's children, likewise, are a strong motivation for Omar to turn around his life. Two of his children live in New Jersey with their mother and her husband; Omar speaks periodically with those children's mother. In a recent call, Omar learned that his sixteen-year-old daughter is pregnant and that he will become a grandfather while incarcerated. Omar wants to be present, physically and emotionally, in his children and grandchild's lives, and is considering whether he may relocate to New Jersey while on supervised release (with this Honorable Court's approval, at the appropriate time), thus also changing the "people, places and things" in his daily life.

To this end, one of the more profound statements that Mr. Vazquez will share with this Honorable Court is that he "wants to be a person again." He wants to be a positive and sober version of himself. Omar's ability to do so, respectfully, is suggested not only by self-reflection since his 2018 incarceration, but also approximately eight years of abstinence from heroin and crack cocaine abuse from 2005 to 2013,[5] along with a history of legal, productive employment.

**Second**, a "court, in determining the particular sentence to be imposed, shall consider… any pertinent policy statement" under the guidelines. See 18 U.S.C. § 3553(a)(5). To this end, Mr. Vazquez respectfully adopts the argument in Sec. II.C., supra., on application of U.S.S.G. § 5G1.3 in support of an order that the federal sentence run concurrent to the anticipated five-year prison sentence in No. KNL-CR19-0160209-T.

**Third**, a "court, in determining the particular sentence to be imposed, shall consider…the

---

[4]    Mr. Vazquez asked his mother not to attend the sentencing hearing, though she supports him, because the last time that she attended his state court hearing, she collapsed and was taken directly to the hospital, where she remained overnight.
[5]    Mr. Vazquez acknowledges that he smoked marijuana during that timeframe, but "had sobered-up for the most part." See Doc. 295 at 14.

13

kinds of sentences available," "the kinds of sentence and sentencing range established for…the applicable category of offense…," and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." See 18 U.S.C. § 3553(a)(3), (a)(4)(A), (a)(6).

Detailed in Sec. II.B., supra., regardless whether Mr. Vazquez's criminal history category is II (resulting in a guideline range of 41-51 months), see Doc. 295-4 at 4-5, or III (resulting in a guideline range of 46-57 months), see Doc. 295 at 16, the statutory 60-month mandatory minimum sentence becomes the guideline range, under U.S.S.G. § 5G1.1(b).

Re. the need to avoid unwarranted sentence disparities, Mr. Vazquez respectfully notes that co-defendant Xavier Diaz, who agreed to application of the leadership enhancement under U.S.S.G. § 3B1.1(c) and for whom the probation officer recommended a firearm enhancement under U.S.S.G. § 2D1.1(b)(1), received a sentence of 60 months in prison . See e.g. Doc. 249 (defendant's sentencing memorandum); Doc. 295 at 4. Neither enhancement applies here.

**Finally**, a "court, in determining the particular sentence to be imposed, shall consider… the need for the sentence imposed…to promote respect for the law, and to provide just punishment;…to afford adequate deterrence to criminal conduct;…and to protect the public from further crimes of the defendant." See 18 U.S.C. § 3553(a)(2)(A), (B), (B).

Respectfully, the statutory five-year mandatory minimum prison sentence is "sufficient, but not greater than necessary, to comply with" these purposes. Of note, Mr. Vazquez's prior state convictions all are misdemeanors, with the longest sentence imposed most recently in Nos. W11D-CR18-0161905-S and W11D-CR15-0331252-T: one year to serve in prison. To similar end, Mr. Vazquez's incarceration since July 2018 is his longest. Mr. Vazquez has used that time for self-reflection and improvement, learning in available programming and from others. He

understands not only that he needs to change "people, places and things" to achieve a better outcome, but also that he needs professional help to process his emotions re. his family issues and to develop better coping strategies, which, in turn, will help him to maintain his sobriety.

### III. Conclusion.

The defendant, JESUS VAZQUEZ-MARTINEZ, hereby respectfully requests that this Honorable Court impose a five-year mandatory minimum prison sentence. Mr. Vazquez further respectfully requests that this Honorable Court recommend that the Bureau of Prisons designate Mr. Vazquez to Federal Correctional Institution Fort Dix, New Jersey and recommend that Mr. Vazquez participation in the Residential Drug Abuse Program (RDAP) while incarcerated.

                                            Respectfully submitted,
                                            Michael Rivera, the Defendant

By:        /s/ Heather Clark
            Heather Clark
            Conn. Bar No. 429967
            Clark Law Office
            300 State Street, Suite 309
            New London, CT 06320
            Tel.: (860) 574-9112, (203) 772-7939
            Fax: (860) 574-9220
            Email: heather@hclarklaw.com

CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2020, the foregoing Defendant's Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                            /s/ Heather Clark
                                            Heather Clark